UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES SEYMOUR, | : | |
| | : | **Case No. 2:21-cv-00313** |
| PLAINTIFF, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT CHRISTOPHER MILLER, *et al.*, | : | |
| | : | |
| DEFENDANTS. | : | |

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Now come the Defendants, Scott Christopher Miller and the Village of Coolville, Ohio, by counsel, respectfully requesting this Court grant the Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). A Memorandum in Support is attached hereto and incorporated by reference.

Respectfully Submitted,
Lambert Law Office

/s/ Cassaundra L. Sark
Randall L. Lambert (0017987)
Cassaundra L. Sark (0087766)
215 South Fourth Street
P.O. Box 725
Ironton, OH 45638
(740) 532-4333
(740) 532-7341 – Fax
*Counsel for Defendants*

**MEMORANDUM IN SUPPORT**

I. **STATEMENT OF THE FACTS**

On or around August 2019, James Seymour (hereinafter, "Plaintiff") was walking on the road near his residence. (Doc. #: 1, ¶ 9). According to the Complaint, the Village of Coolville Police Department's Chief of Police, Scott Miller (hereinafter, "Defendant Miller"), drove his police cruiser alongside Plaintiff, exited the police cruiser, and stopped Plaintiff without just cause. (Doc. #: 1, ¶ 9). Plaintiff claims that once Defendant Miller was out of the cruiser, he "withdrew his firearm and commanded Plaintiff Seymour to get on his knees." (Doc. #: 1, ¶ 10). The Complaint claims that Defendant Miller then commanded a police dog to go after Plaintiff, and Defendant Miller then beat and restrained Plaintiff. (Doc. #: 1, ¶¶ 11-12). Plaintiff was then allegedly placed in the police cruiser, but was not taken to jail. (Doc. #: 1, ¶¶ 13-14).

Even though Plaintiff was restrained in the back of the police cruiser, he was able to use his cellphone to call his fiancé, Rose Tyman (who was also Coolville's Mayor at that time). (Doc. #: 1, ¶ 16). According to the Complaint, when Defendant Miller heard the Plaintiff using his cellphone, he took the phone from Plaintiff and placed it in the front of the police cruiser. (Doc. #: 1, ¶ 17). Ultimately, Tyman and Plaintiff's mother arrived on the scene. (Doc. #: 1, ¶¶ 18, 20). Approximately two hours later, Defendant Miller permitted Plaintiff to leave the scene and go home. (Doc. #: 1, ¶ 22). Plaintiff claims that as a result of that encounter, he "sustained bruising and other physical injuries". (Doc. #: 1, ¶ 23).

According to the Complaint, no incident occurred between Plaintiff and Defendant Miller for approximately 9 months. Then, on or around May 29/30, 2020, the Complaint alleges that Plaintiff was pulling out of the Go Mart parking lot, and at that time, Defendant Miller drove by in his police cruiser. (Doc. #: 1, ¶ 28). Plaintiff claims that he waived at Defendant Miller and his

passenger, a city council member, as they passed by. (Doc. #: 1, ¶ 29). As Plaintiff was driving home, "Defendant Miller approached him from the rear with his cruiser and instructed Plaintiff Seymour to pull over." (Doc. #: 1, ¶ 30). According to the Complaint, Plaintiff requested that other police be called due to the history between himself and Defendant Miller. (Doc. #: 1, ¶ 33). In response, Defendant Miller allegedly told Plaintiff "that he was nothing but a criminal and so had no right to ask for additional help." (Doc. #: 1, ¶ 33). The Complaint claims that Plaintiff then "attempted to call his fiancé, the mayor of the Village of Coolville, but when Defendant Miller heard this, he became irate, demanded Plaintiff Seymour end the telephone call, and struck Plaintiff Seymour in the face (on the right side of his chin) with a closed fist." (Doc. #: 1, ¶ 34). Defendant Miller allegedly told Plaintiff "that he did not have any rights because he is a 'criminal,' grabbed him, slammed him onto the ground, and put him into a choke hold." (Doc. #: 1, ¶ 35). Plaintiff claims that Defendant Miller's "strangulation" was so severe, excessive, and lasted so long that Plaintiff defecated on himself. (Doc. #: 1, ¶ 37).

After what Plaintiff described as a "brutal and unlawful attack", Defendant Miller told Plaintiff to get up and place himself in the police cruiser. (Doc. #: 1, ¶ 39). According to Plaintiff, Defendant Miller told him that if he did not comply, he would be beaten and choked again. (Doc. #: 1, ¶ 39). After Plaintiff was placed in the police cruiser, an ambulance arrived. (Doc. #: 1, ¶ 40). An officer from the Ohio State Highway Patrol also pulled over to check on the situation. (Doc. #: 1, ¶ 41). Plaintiff claims that he did not feel safe around Defendant Miller and requested another law enforcement agency be present. (Doc. #: 1, ¶ 42). Deputy Kline of the Athens County Sheriff's Department responded to the scene and transported Plaintiff to Southeastern Ohio Regional Jail. (Doc. #: 1, ¶¶ 43-44). As a result of the incident, Plaintiff claims that he suffered a bruised larynx, other physical injuries, and post-traumatic stress disorder stemming from the May 29/30, 2020

incident, "as well as other incidents in which he has been brutalized by Officer Miller." (Doc. #: 1, ¶ 45).

Due to the alleged incidents between Plaintiff and Defendant Miller, Plaintiff filed a Complaint in the United States District Court for the Southern District of Ohio, Eastern Division, on January 23, 2021. (Doc. #: 1). The Complaint names Scott Christopher Miller and the Village of Coolville, Ohio, as Defendants and sets forth the following causes of action: First Claim against Defendant Miller – Violation of 42 U.S.C. § 1983 – Excessive Force; Second Claim against Defendant Miller – Violation of 42 U.S.C. § 1983 – Unlawful Seizure and False Imprisonment; Third Claim against Defendant Village of Coolville – Violation of 42 U.S.C. § 1983 – *Monell* Liability; Fourth Claim against Defendant Miller – R.C. § 2307.60 – Violation of R.C. § 2921.45 (Interfering with Civil Rights); Fifth Claim against Defendant Miller – R.C. § 2307.60 – Violation of R.C. § 2921.44 (Dereliction of Duty); Sixth Claim against Defendant Miller – R.C. § 2307.60 – Violation of R.C. § 2921.52 (Sham Legal Process); Seventh Claim against Defendant Miller – Negligence; Eighth Claim against Defendant Miller – Battery; Ninth Claim against Defendant Miller – Intentional Infliction of Emotional Distress; Tenth Claim against Defendant Village of Coolville – Negligent Hiring, Training, and Supervision. For the reasons set forth below, the Defendants maintain that the claims set forth in the Complaint fail to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

II. **LAW AND ARGUMENT**

A. **Motion To Dismiss Standard.**

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The

4

plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Although a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "[A] naked assertion […] gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility […]." *Twombly*, 550 U.S. at 557. "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), 'a […] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Klusty v. Taco Bell Corp.*, 909 F.Supp. 516, 520 (S.D. Ohio, 1995) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

### B. The Applicable Statute Of Limitations Bars Plaintiff's Claims That Occurred Prior To January 23, 2020.

Plaintiff's Fourth, Fifth, and Sixth Claims are brought pursuant to R.C. § 2307.60. Additionally, Plaintiff's Eighth and Ninth Claims set forth claims for battery and intentional infliction of emotional distress, respectively. The aforesaid causes of action are subject to a one-year statute of limitations under the applicable statutes.

"[C]laims brought under O.R.C. § 2307.60(A)(1) are subject to a one-year statute of limitations, because this statute 'contemplates a penalty.'" *Glaze v. Cuyahoga Cnty.*, No. 1:19 CV 2969, *7 (N.D. Ohio 2020) (citing *Marquardt v. Carlton*, Case No. 1:18 CV 333, 2019 U.S. Dist. LEXIS 58402, *6-7 (N.D. Ohio 2019)). *See also State ex rel. Cnty. of Cuyahoga v. Jones Lang*

5

*LaSalle*, 2017-Ohio-4066, ¶ 47 ("[T]he court found that even if a cause of action existed under R.C. 2307.60, the claim is barred by a one-year statute of limitations.").

Additionally, R.C. § 2305.111 provides that the statute of limitations for battery claims is one year. *See Retuerto v. Berea Moving Storage & Logistics*, 38 N.E.3d 392, 2015-Ohio-2404, ¶ 72. The aforesaid statute provides the following, in pertinent part:

> (B) Except as provided in section 2305.115 of the Revised Code and subject to division (C) of this section, an action for assault or battery shall be brought within one year after the cause of the action accrues.
> * * *

The statute of limitations for an intentional infliction of emotional distress claim varies in Ohio, depending on the underlying claims in the complaint. *Lee v. Lucas*, Case No. 1:10-CV-00151, *8 (N.D. Ohio 2011). The applicable statute of limitations is governed by the tort that supports the intentional infliction of emotional distress claim. *Id*. (citing *Crist v. Pugin*, 2008 WL 2571229, *1-2 (N.D. Ohio 2008). For example, in *Crist*, the court determined that a one-year statute of limitations applied to plaintiff's claim of intentional infliction of emotional distress because it was based on his false arrest/false imprisonment claim. *Id*. *See also Brown v. Holiday Inn Express & Suites*, 118 N.E.3d 1021, 2018-Ohio-3281, ¶ 14 (citing *Stafford v. Clever Investigations, Inc.*, 10th Dist. No. 06AP-1204, 2007-Ohio-5086, 2007 WL 2800333, ¶ 8-9) (the plaintiff's claim for intentional infliction of emotional distress arises from intentional, offensive touching. In such a circumstance, the one-year statute of limitations for battery governs a claim for intentional infliction of emotional distress."). Thus, an intentional infliction of emotional distress claim is "parasitic" to another claim for purposes of the statute of limitations. *Albiola v. Pugh*, No. 4:14CV1645, *13 (N.D. Ohio 2015) (citing *Manin v. Diloreti*, 94 Ohio App.3d 777, 779 (1994). This ensures that a plaintiff cannot obtain a longer statute of limitations simply by recharacterizing his claim as one of intentional infliction of emotional distress. *Id*.

The Complaint alleges that "[o]n or around August 2019, Plaintiff Seymour was walking on the road near his residence, when Defendant Miller drove his police cruiser alongside Plaintiff Seymour, exited his police cruiser, and stopped Plaintiff Seymour without just cause." (Doc. #: 1, ¶ 9). The Complaint further claims that "[o]nce out of the cruiser, Defendant Miller withdrew his firearm and commanded Plaintiff Seymour to get on his knees." (Doc. #: 1, ¶ 10). Then, according to the Complaint, Defendant Miller "commanded a police dog to go after Plaintiff Seymour." (Doc. #: 1, ¶ 11). Plaintiff alleges that Defendant Miller then beat and restrained Plaintiff, and then he was placed in the police cruiser. (Doc. #: 1, ¶¶ 12-13). As a result of the incident, Plaintiff claims that he "sustained bruising and other physical injuries from this incident." (Doc. #: 1, ¶ 23).

In the present case, Plaintiff's intentional infliction of emotional distress claim is grounded in the torts of false imprisonment and battery. Thus, the Defendants maintain that a one-year statute of limitations is applicable since the Plaintiff's intentional infliction of emotional distress claim is dependent upon his claims of false imprisonment and battery. Additionally, the one-year statute of limitations for Plaintiff's battery claim and claims brought pursuant to R.C. § 2307.60 bar any action that occurred one year before the filing of the Complaint. Thus, the incident that occurred on or around August 2019 cannot provide the basis for Plaintiff's battery and intentional infliction of emotional distress claims or the claims pursuant to R.C. § 2307.60.

### C. The First, Second, And Third § 1983 Claims Fail To State A Claim Against Defendant Miller, In His Official Capacity, And Defendant Village of Coolville.

"[O]fficial-capacity suits … represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Therefore, "[a] suit against an individual in his official capacity is the equivalent of a suit against the government entity." *Webb v. Greene Cnty. Sheriff's Office*, 494

F.Supp.2d 779, 795 (S.D. Ohio 2007) (quoting *Myers v. Potter*, 422 F.3d 347, 358 (6th Cir. 2005). However, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id*. at 691; *see also Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To satisfy the requirements of *Monell*, a plaintiff must (1) identify the policy; (2) connect the policy to the governmental entity; and (3) show injury of a constitutional magnitude incurred because of that policy's execution. *Alkire v. Irving*, 330 F.2d 802, 815 (6th Cir. 2003); *see also Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

Moreover, the policy or custom must be "the moving force behind the constitutional violation" in order to establish the liability of a government body under § 1983. *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the alleged injury. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). A plaintiff must also claim that "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *see also Johnson v. Hardin Cty.*, 908 F.2d 1280, 1286 (6th Cir. 1990) (Liability "attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy *with respect to the subject matter* in question.") (emphasis in original).

In this case, Plaintiff has alleged little more than "labels and conclusions" and "a formulaic

recitation of the elements." *Twombly*, 550 U.S. at 555. As the court fittingly explained in *Curney*,

> This Court understands *Twombly and Iqbal* as requiring Plaintiff to allege some facts in his Complaint to support his conclusory allegations that Highland Park "fail[s] to adequately train and/or supervise its police officers." Plaintiff cannot allege a municipal liability claim hoping that discovery will reveal facts to support the claim. A lawsuit is not a fishing expedition for a plaintiff to discover a claim against the defendant.

*Curney v. City of Highland Park*, No. 11-12083, 2012 WL 1079473, *5 (E.D. Mich. 2012); *see also Denard v. Williams*, No. 10-14023, 2011 WL 4374534, *4 (E.D. Mich. 2011) ("[t]o merely state that a municipality has a policy or custom is not enough; a plaintiff must allege facts demonstrating [the] municipality's policy, such as examples of past situations where law enforcement officials have violated constitutional rights.").

Counts I and II of the Complaint fail to allege any policy or custom that was the moving force behind Plaintiff's alleged constitutional violations, and as a result, do not meet the pleading requirements set forth in *Monell*.

Count III conclusively claims that "Defendant Miller acted under the color of law, as well as under the color of policies, practices, and customs of the Coolville Police Department." (Doc. #: 1, ¶ 71). The Complaint further avers that "[t]he Coolville Police Department's policies, practices, customs, and actions actually and proximately caused, and enabled, Defendant Miller's violations of Plaintiff Seymour's constitutional rights." (Doc. #: 1, ¶ 72). However, these claims do not meet the requirements of *Monell* because the Complaint does not identify "any specific municipal policy, custom, training program, or supervision policy to support [his] claims against the [Municipal Defendants]." *Jackson v. City of Highland Park*, No. 15-10678, *7 (E.D. Mich. 2015) (quoting *Rush v. City of Lansing*, 13-1317, 2015 WL 632321, *5 (W.D. Mich. 2015) (dismissing all claims against the City of Lansing under Rule 12(b)(6)). Count III also fails to

allege that the Defendants deliberately chose to follow a course of action among various alternatives regarding the subject matter in question. Thus, because the Complaint fails to specifically allege a policy or custom that was the moving force behind the alleged constitutional violation, as required pursuant to *Monell*, Counts I, II, and III fail to state a claim upon which relief can be granted against Defendant Miller, in his official capacity, and the Village of Coolville.

    **D.** **The Fourth, Fifth, and Sixth Claims Fail To State A Claim Upon Which Relief Can Be Granted.**

Plaintiff's Fourth Claim, alleging interference with civil rights pursuant R.C. § 2921.45 through R.C. § 2307.60, is brought against Defendant Miller in his individual and official capacities. Plaintiff's Fifth Claim, alleging dereliction of duty pursuant to R.C. § 2921.45 through R.C. § 2307.60, is brought against Defendant Miller in his individual and official capacities. Plaintiff's Sixth Claim, alleging sham legal process pursuant to R.C. § 2921.52 through R.C. § 2307.60, is also brought against Defendant Miller in his individual and official capacities. For the reasons set forth below, Defendants maintain that the Complaint fails to state a claim upon which relief can be granted regarding Plaintiff's Fourth, Fifth, and Sixth Claims.

    **i.** **Ohio Revised Code § 2307.60 Does Not Create A Separate Civil Action To Support Plaintiff's Fourth, Fifth, and Sixth Claims.**

R.C. § 2307.60(A)(1) "is merely a codification of the common law that a civil action is not merged in a criminal prosecution." *Allen v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-383, ¶ --- (quoting *Edwards v. Madison Twp.*, 10th Dist. No. 97APE06-819 (1997), *appeal not allowed*, 81 Ohio St.3d 1495(1998)). *See also Taylor v. Mahoning Cnty. Children Servs. Bd.*, No. 4:11CV000028, *9-10 (N.D. Ohio 2012) (quoting *Story v. Hammond*, 4 Ohio 376, 378 (1831)) ("The statute has been interpreted as 'a codification of the common law in Ohio that a civil action is not merged in a criminal prosecution which arose from the same act or acts.'"). In other words,

a claim cannot be brought solely pursuant to R.C. § 2307.60. *Id. See also Cobra Pipeline Co., Ltd. v. Gas Natural, Inc.*, 132 F.Supp.3d 945, 953 (N.D. Ohio 2015) ("Sections 2307.60 and 2307.61 . . . do not create a separate civil cause of action for every corresponding criminal statute."); *Sollenberger v. Sollenberger*, 173 F.Supp.3d 608, 636 (S.D. Ohio 2016) (citing *Cobra Pipeline* and finding that "a separate civil action must be available before invocation of Section 2307.60."). Thus, a plaintiff's right to relief for an injury sustained by a criminal act is predicated upon the existence of a separate civil action that vindicates the injury: "Claims for civil damages based solely upon an alleged violation of a criminal statute are inappropriate. Rather, the claim must arise from common law or a statutory right to a civil cause of action." *Taylor,* at *9-10 (quoting *Jasar Recycling, Inc. v. Major Max Mgmt. Corp.*, No. 4:08CV2830, 2010 WL 395212, *7 (N.D. Ohio, 2010) (Limbert, M.J.) (internal citations omitted).

Thus, because R.C. § 2307.60 does not create a separate civil cause of action, the Defendants maintain that Plaintiff's Fourth, Fifth, and Sixth Claims fails to state a claim upon which relief can be granted.

### ii. The Complaint Fails To Set Forth Allegations To Support Plaintiff's Fourth Claim Pursuant To R.C. § 2921.45.

Ohio Revised Code § 2921.45 provides the following:

(A) No public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.

(B) Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

As explained above, the Defendants maintain that R.C. § 2921.45 cannot provide a separate cause of action because it is a criminal statute. *See Phillips v. City of Cincinnati*, No. 1:18-cv-541, *15-16 (S.D. Ohio 2019) (citing *Thompson v. Rings*, No. 2:08-cv-230, 2008 WL 5130417 (S.D.

11

Ohio 2008) ("It is clear, however, that Ohio criminal statutes do not give rise to civil liability.")). *See also Northrup v. City of Toledo Police Div.*, No. 3:12-cv-01544, *5-6 (N.D. Ohio 2015) ("Northrup also alleges violations of Ohio Revised Code § 2921.45, interference with his civil rights, and § 2921.44, dereliction of duty. * * * These allegations do not state plausible claims for relief because the statutes Northrup cites are criminal statutes that do not provide for a private cause of action.").

Nonetheless, the Complaint fails to set forth allegations sufficient to withstand a motion to dismiss. The statute clearly requires Defendant Miller to have acted "knowingly". However, the Complaint conclusively alleges that "Defendant Miller, on at least two separate occasions, violated and interfered with Plaintiff Seymour's civil rights. On at least two separate occasions, Defendant Miller violated Plaintiff Seymour's Constitutional civil rights protected by the Fourth, Fifth, and Fourteenth Amendments by subjecting Plaintiff Seymour to excessive force and false imprisonment." (Doc. #: 1, ¶ 77). The Complaint further claims that the actions of Defendant Miller "actually and proximately caused the violation of Plaintiff Seymour's Constitutional rights, and in the process caused physical damages and permanent and ongoing psychological damages, in addition to the deprivation of Plaintiff Seymour's civil rights." (Doc. #: 1, ¶ 78).

The Complaint clearly lacks the assertion that Defendant Miller acted "knowingly", which is required by the statute. In fact, the Fourth Claim fails to allege anything about Defendant Miller's mental state. *See Repub. Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("Although 'conditions of a person's mind may be alleged generally,' Fed.R.Civ.P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on

its face.'"). *See also B & G Towing LLC v. City of Detroit*, No. 19-2089, *7 (6th Cir. 2020); *Katoula v. Detroit Entertainment, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014).

Therefore, because the Complaint does not adequately plead facts regarding Defendant Miller's mental state, the Defendants maintain that the Complaint fails to state a claim upon which relief can be granted regarding the Fourth Claim.

> iii. **The Complaint Fails To Set Forth Allegations To Support Plaintiff's Sixth Claim Pursuant To R.C. § 2921.52.**

Ohio Revised Code § 2921.52 is entitled "Using sham legal process". Pursuant to R.C. § 2921.52(A)(4), a "sham legal process" is an instrument that meets all of the following conditions:

> (a) It is not lawfully issued.
>
> (b) It purports to do any of the following:
>
>> (i) To be a summons, subpoena, judgment, or order of a court, a law enforcement officer, or a legislative, executive, or administrative body.
>>
>> (ii) To assert jurisdiction over or determine the legal or equitable status, rights, duties, powers, or privileges of any person or property.
>>
>> (iii) To require or authorize the search, seizure, indictment, arrest, trial, or sentencing of any person or property.
>
> (c) It is designed to make another person believe that it is lawfully issued.

Additionally, R.C. § 2921.52(B) requires the person to act knowingly in using a sham legal process:

> (B) No person shall, knowing the sham legal process to be sham legal process, do any of the following:
>
>> (1) Knowingly issue, display, deliver, distribute, or otherwise use sham legal process;
>>
>> (2) Knowingly use sham legal process to arrest, detain, search, or seize any person or the property of another person;

> (3) Knowingly commit or facilitate the commission of an offense, using sham legal process;
>
> (4) Knowingly commit a felony by using sham legal process.

In this case, the Complaint's Sixth Claim sets forth a claim for Defendant Miller's purported violation of R.C. § 2921.52. (Doc. #: 1, ¶¶ 86-91). The Complaint claims that "Defendant Miller used sham legal processes when he assaulted with excessive force, detained, and/or arrested Plaintiff Seymour without justification and when Plaintiff Seymour had committed no crimes." (Doc. #: 1, ¶ 89). Additionally, the Complaint avers that "Defendant Miller admitted to his use of sham legal processes when he stated to Plaintiff Seymour that Defendant Miller could pull Plaintiff Seymour over for 'anything I want.'" (Doc. #: 1, ¶ 90). However, the Complaint fails to allege that any instrument was used in the process of the alleged sham legal process, which is required by the statute.

The Complaint also fails to allege that Defendant Miller acted "knowingly". As explained above, R.C. § 2921.52(B) explicitly states that the person must act "knowingly". However, the Complaint does not plead that Defendant Miller knowingly violated the law. *See Bickerstaff v. Lucarelli,* No. 1:14CV831, *9-10 (N.D. Ohio 2015) (In the Amended Complaint, Bickerstaff does not plead that Lucarelli and other defendants knowingly violated R.C. § 2921.52. "Thus, because Bickerstaff fails to plead that Lucarelli had the requisite mental state, her claims under R.C. § 2921.52 must also fail."). Accordingly, the Defendants maintain that the Sixth Claim fails to state a claim upon which relief can be granted.

### E. The Seventh, Eighth, And Tenth Claims Fail To State A Cause Of Action Upon Which Relief Can Be Granted.[1]

Official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985), quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). Therefore, if the allegations contained in the complaint are directed against the named officeholder in his/her official capacity, then it is equivalent to suing the political subdivision rather than the officeholder in an individual or personal capacity. *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1438, 927 N.E.2d 585, ¶ 21.

The Political Subdivision Tort Liability Act, as codified in Ohio Revised Code Chapter 2744, establishes a three-tiered analysis for determining whether a political subdivision, or employees of a political subdivision, is immune from liability. *Carter v. Cleveland*, 83 Ohio St.3d 24, 28 (1998); *see also Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10. Moreover, courts have consistently held that Ohio Revised Code Chapter 2744 provides immunity to political subdivisions for intentional tort claims.

### i. R.C. § 2744.02 shields Defendant Village of Coolville and Defendant Miller, in his official capacity, from liability regarding Plaintiff's Seventh and Tenth Claims.

Ohio Revised Code § 2744.02(A)(1) is the first tier in determining whether a political subdivision is immune from liability. *Dolan v. Glouster*, 173 Ohio App., 2007-Ohio-6275, 879 N.E.2d 838, ¶ 16; *see also Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 825 N.E.2d 716, ¶ 12. Ohio Revised Code § 2744.02(A)(1) states that "a political subdivision is not

---

[1] The Complaint fails to specify if the Seventh and Eighth Claims are against Defendant Miller in his individual and/or official capacities. Unlike the Ninth Claim where the Complaint specifically states that the "claim is brough [*sic*] against Scott Christopher Miller in his individual capacity." (Doc. #: 1, ¶ 103). Thus, the Motion to Dismiss will address the Seventh and Eighth Claims as if they are brought against Defendant Miller in his official capacity. *See Lovett v. Cole*, No. 11-277-SAS-JGW, *2 (S.D. Ohio 2011) (citing *Pelfrey v. Chambers*, 43 F.3d 1034 (6th Cir. 1995)).

liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a government or proprietary function." Furthermore, R.C. § 2744.02(A)(2) states that "[t]he defenses and immunities conferred under this chapter apply in connection with all governmental and proprietary functions performed by a political subdivision and its employees, whether performed on behalf of that political subdivision or on behalf of another political subdivision."

After immunity is generally established, "the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply." *Hortman*, at ¶ 12. The five exceptions encompassed in R.C. § 2744.02(B) include:

> 1) Negligent operation of vehicles by city employees; 2) negligence of employees in connection with proprietary functions; 3) failure to keep public roads in repair; 4) employee negligence that occurs within or on the grounds of buildings used in connection with the performance of a governmental function; and 5) situations where liability is expressly imposed by statute.

*Stillwell v. Xenia*, 2nd App. Dist. No. 2000-CA-41, 2001 WL 127880, at *10.

Pursuant to R.C. § 2744.01(F), a "political subdivision" includes, but is not limited to, a "municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." There is no question that the Village of Coolville constitutes a "political subdivision", as they are a body responsible for governmental activities in a geographic area smaller than that of the state.

Additionally, R.C. § 2744.01(B) defines an "employee" as "an officer, agent, employee, or servant". An "employee" also "includes any elected or appointed official of a political subdivision." Defendant Miller, as the Chief for the Village of Coolville, constitutes an employee of the Village pursuant to R.C. § 2744.01(B).

In this case, Defendant Miller was engaged in a "governmental function". The term "governmental function", referred to in R.C. § 2744.02, includes, but is not limited to, "[t]he provision or nonprovision of police". R.C. § 2744.01(C)(2)(a). A "governmental function" also includes the enforcement of any law. R.C. § 2744.01(C)(2)(i). It is clear from the allegations set forth in the Complaint that Defendant Miller's actions, which provide the basis for all of Plaintiff's claims, were taken in connection with his employment as the Chief of Police for the Village.

Moreover, none of the exceptions listed in R.C. § 2744.02(B) are applicable. Defendant Miller did not negligently operate a vehicle, did not act negligently in connection with any proprietary function as defined in R.C. § 2744.01(G), and did not fail to keep public roads in repair. No alleged negligence occurred within, or on the grounds of, a building used in connection with the performance of a governmental function, and the Ohio Revised Code does not expressly impose liability upon Defendant Miller. Thus, because the exceptions are inapplicable, it is unnecessary to determine whether immunity is reinstated under R.C. § 2744.03.[2] Accordingly, the Defendants maintain that R.C. § 2744.02 shields Defendant Miller, in his official capacity, and Defendant Village of Coolville from liability regarding Plaintiff's Seventh and Tenth Claims.

### ii. **Defendant Miller is immune from liability, in his official capacity, regarding the Eighth Claim.**

Ohio Revised Code § 2744.02 includes no specific exceptions for intentional torts. As a result, Ohio courts have consistently held that political subdivisions are immune from intentional

---

[2] Only after it is established that one of the exceptions, listed in R.C. § 2744.02(B), applies does a court move to the third tier of analysis in determining whether a political subdivision, or the employees of a political subdivision, is liable. *Terry,* at ¶ 13; *see also* Gotherman & Babbit, Ohio Municipal Law (Baldwin 2d Ed. 1992), Txt 32.4 (stating that "[t]he defenses and immunities provided to a political subdivision by R.C. 2744.03(A) only become relevant if one of the five exceptions to immunity in R.C. 2744.02(B) applies to render the subdivision vulnerable to liability."). If an exception to the general immunity provision applies pursuant to R.C. § 2744.02(B), "under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies." *Hortman,* ¶ 12. However, in this case, none of the exceptions listed in R.C. § 2744.02(B) are applicable. Therefore, the third tier of analysis is not required.

tort claims under R.C. 2744.02. *Williams v. McFarland Properties, LLC*, 177 Ohio App.3d 490, 2008-Ohio-3594, 895 N.E.2d 208, ¶ 11 (citing *Thayer v. W. Carrollton Bd. of Edn.*, Montgomery App. No. 20063, 2004-Ohio-3921, 2004 WL 1662198; *Terry v. Ottawa Cty. Bd. of Mental Retardation & Developmental Disabilities*, 151 Ohio App.3d 234, 2002-Ohio-7299, 783 N.E.2d 959). *See also Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450 (1994), ("Consequently, except as specifically provided in R.C. 2744.02(B)(1), (3), (4) and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts. * * * There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress"); *Hubbard v. Canton City School Bd. of Edn.,* 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 8.

In this case, the Complaint sets forth a battery claim (Eighth Claim). Caselaw clearly establishes that the aforesaid tort constitutes an intentional tort, and thus, the political subdivision is immune from liability. *See Price v. Austintown Local Sch. Dist. Bd.*, 178 Ohio App.3d 256, 2008-Ohio-4514, ¶ 23 (citing *McGee v. Goodyear Atomic Corp.* 103 Ohio App.3d 236, 249 (1995)) (holding that defamation is classified as an intentional tort, along with such torts as assault, battery, false imprisonment, trespass, conversion, intentional infliction of emotional distress, and fraud); *Zieber v. Heffelfinger*, Richland App. No. 08CA0042, 2009-Ohio-1227, ¶ 50 (battery and assault are intentional torts); *Cornelison v. Colosimo*, 2010-Ohio-2527, 2010 Ohio App. LEXIS 2103 (11th Dist. 2010) (recognizing political subdivisions are immune from intentional tort claims, and finding political subdivisions immune from intentional tort claim for false imprisonment, among others); *Ramey v. Mudd*, 154 Ohio App.3d 582, 2003-Ohio-5170, 798 N.E.2d 57 (finding immunity for assault and battery); *Ratcliff v. Darby*, Scioto App. No. 02CA2832, 2002-Ohio-6626

(police department immune from liability for claims of assault, battery, false arrest and malicious prosecution); *Maggio v. City of Warren*, Trumbull App. No. 2006-T-0028, 2006-Ohio-6880 (immunity for assault, battery, false arrest, malicious prosecution, and intentional and negligent infliction of emotional distress claims). Thus, because Plaintiff's battery claim constitutes an intentional tort, Defendant Miller is immune from liability in his official capacity.

### III.   CONCLUSION

For the reasons set forth above, Defendants maintain that dismissal regarding the abovementioned claims is warranted pursuant to Fed.R.Civ.P. 12(b)(6). Thus, the Defendants respectfully request this court grant the Motion to Dismiss.

                                             Respectfully Submitted,

                                             /s/ Cassaundra L. Sark
                                             Randall L. Lambert (0017987)
                                             Cassaundra L. Sark (0087766)
                                             *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the Notice of Appearance was provided via the Court's electronic filing system (CM/ECF) to all counsel of record on the 11th day of March 2021.

                                        Lambert Law Office

                                        /s/ Cassaundra L. Sark
                                        Cassaundra L. Sark (0087766)
                                        *Counsel for Defendants*