**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JAMES SEYMOUR,**

        **Plaintiff,**

                                **Civil Action 2:21-cv-313**

    **v.**                            **Magistrate Judge Elizabeth P. Deavers**

**SCOTT CHRISTOPHER MILLER,** *et al.*,

        **Defendants.**

## OPINION AND ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 1331. With the consent of the parties

to the jurisdiction of the United States Magistrate Judge (ECF No. 16), 28 U.S.C. § 636(c), this

matter is before the Court for consideration of Defendants' Partial Motion to Dismiss the First

Amended Complaint, ECF No. 14. For the reasons that follow, Defendants' Motion, ECF No.

14, is **GRANTED IN PART** and **DENIED IN PART**.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed this case on January 23, 2021, asserting ten causes of action against

Defendants Scott Christopher Miller ("Miller") and the Village of Coolville, Ohio (the "Village

of Coolville"). (ECF No. 1.) On March 11, 2021, Defendants moved to dismiss the Complaint.

(ECF No. 6.) On April 26, 2021, Plaintiff filed the subject First Amended Complaint and

Demand for Jury Trial ("FAC"), generally re-asserting the same ten causes of action against

Defendants as follows:

    (1)    Violation of 42 U.S.C. § 1983 (Fourth Amendment, Fifth Amendment, and

            Fourteenth Amendment – Excessive Force), against Defendant Miller in his

individual and official capacities;

(2)     Violation of 42 U.S.C. § 1983 (Fourth Amendment, Fifth Amendment, and Fourteenth Amendment – Unlawful Seizure and False Imprisonment), against Defendant Miller in his individual and official capacities;

(3)     Violation of 42 U.S.C. § 1983 (*Monell* Liability), against Defendant Village of Coolville;

(4)     Ohio Revised Code ("O.R.C.") § 2307.60 claim for violation of O.R.C. § 2921.45 *et seq.* (Interfering with Civil Rights), against Defendant Miller in his individual and official capacities;

(5)     O.R.C. § 2307.60 claim for violation of O.R.C. § 2921.45 *et seq* (Dereliction of Duty), against Defendant Miller in his individual and official capacities;

(6)     O.R.C. § 2307.60 claim for violation of O.R.C. § 2921.45 *et seq* (Sham Legal Process), against Defendant Miller in his individual and official capacities;

(7)     Gross Negligence, against Defendant Miller;

(8)     Battery, against Defendant Miller;

(9)     Intentional Infliction of Emotional Distress, against Defendant Miller; and

(10)    Negligent Hiring, Training, and Supervision, against Defendant Village of Coolville.

(ECF No. 13 at PAGEID ## 84-94.)

On May 10, 2021, Defendants filed the subject Motion, seeking to dismiss most of the FAC.  (ECF No. 14 (the "Motion").)  On June 1, 2021, Plaintiff filed a response in opposition.

(ECF No. 15 (the "Opposition").) On June 15, 2021, Defendants filed a reply brief. (ECF No. 16 (the "Reply").[1] The Motion is thus ripe for judicial review.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd*., *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

---

[1] The parties subsequently engaged in mediation but were at impasse. (ECF Nos. 17-19.)

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc*., 491 F. App'x. 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III.    ANALYSIS

In their Motion, Defendants raise various arguments as to why each of the ten causes of action should be dismissed, either in whole or in part. (ECF No. 14.) Generally speaking, Defendants assert that Counts 4, 5, 6, 8, and 9 are barred by the applicable one-year statute of limitations, insofar as Plaintiff's claims are based on events which occurred prior to January 23, 2020; Counts 1, 2, 3 fail to state a claim against Defendant Miller in his official capacity; Counts 4, 5, 6 fail to state a claim under Ohio law; and Ohio law shields Defendant Miller in his official capacity and the Village of Coolville from liability under Counts 7 and 10, respectively. (*See generally id.*) In his Opposition, Plaintiff generally rejects each of Defendants' arguments, but "does not contest the dismissal of Count 10." (*See generally* ECF No. 15.) In their Reply, Defendants generally responded to Plaintiff's arguments and reasserted their own arguments from the subject Motion. (*See generally* ECF No. 16.)

The Court will address each of Defendants' arguments in turn.

**A.      Statute of Limitations (Counts 4, 5, 6, 8, 9)**

First, Defendants argue that Counts 4, 5, 6, 8, and 9 are subject to a one-year statute of limitations, insofar as Plaintiff's claims are based on an incident which allegedly occurred in or around August 2019.  (ECF No. 14 at PAGEID ## 102-104.)  In his Opposition, Plaintiff does not dispute that a one-year statute of limitations applies to Counts 4, 5, 6, 8, and 9, but instead insists that "[t]he gravamen of Plaintiff's . . . counts are events that occurred on May 30, 2020, less than one year before the filing of Plaintiff's Complaint."  (ECF No. 15 at PAGEID # 117) Plaintiff also argues that while "the May 30, 2020 incident can be viewed independently from the August[] 2019 incident[,] [t]his Court could also apply the continuing tort doctrine" given the nature of the conduct alleged.  (*Id.*)  In their Reply, Defendants clarify that the subject Motion "clearly set forth that the statute of limitations argument only applies to acts that occurred prior to January 23, 2020," and argue that Plaintiff's response regarding the continuing tort doctrine is meritless.  (ECF No. 16 at PAGEID ## 125-126.)

The causes of action at issue – Counts 4, 5, 6, 8, and 9 – can be broken into three categories:  Counts 4, 5, and 6 are brought pursuant to O.R.C. § 2307.60, and Counts 8 and 9 are separate common law claims.  As the parties appear to agree, however, each set of claims is subject to a one-year statute of limitations.  First, it is well settled that claims under O.R.C. § 2307.60 (including Counts 4, 5, and 6) are subject to a one-year statute of limitations.  *Brack v. Budish*, No. 1:19-CV-1436, 2021 WL 1960330, at *4 (N.D. Ohio May 17, 2021) ("Both the Northern District of Ohio and Southern District of Ohio apply a one-year statute of limitations to claims under Section 2307.60.") (collecting cases).  Next, Plaintiff's common law battery claim (Count 8) arises under O.R.C. § 2305.111, which expressly provides a one-year statute of

limitations. *See* Ohio Rev. Code § 2305.111(B) ("Except as provided in section 2305.115 of the Revised Code and subject to division (C) of this section, an action for assault or battery shall be brought within one year after the cause of the action accrues."). Finally, Plaintiff's intentional infliction of emotional distress claim (Count 9) is governed by the applicable statute of limitations for the tort(s) underlying the intentional infliction of emotional distress claim. *Triplett-Fazzone v. City of Columbus Div. of Police*, No. 2:12-CV-00331, 2013 WL 1718026, at *7 (S.D. Ohio Apr. 19, 2013) ("[W]hen the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress.") (internal quotations and citations omitted). Here, Count 9 is grounded in allegations of false imprisonment, assault, and battery. Accordingly, Count 9 also is subject to a one-year statute of limitations. *Ruckman v. Riebel*, No. 2:11-CV-874, 2012 WL 4057409, at *4 (S.D. Ohio Sept. 14, 2012) ("[A]n action for false arrest/imprisonment is subject to a one year statute of limitations pursuant to Ohio Revised Code § 2305.11. Plaintiff's claim for intentional infliction of emotional distress is also limited by the one year statute of limitations applicable to assault, pursuant to Ohio Revised Code § 2305.111(B), because the acts underlying this claim would support another tort.") (collecting cases).

Against this legal backdrop, Plaintiff's FAC sets forth the following six general fact sections, alleging events which have occurred at various times since 2019 and which collectively serve as the basis for Plaintiff's claims:

- ¶¶ 9-22: "Defendant Miller beats, unlawfully seizes, and falsely imprison Plaintiff Seymour" (allegedly occurring on or around August 2019);

- ¶¶ 23-26:  "Defendant Miller uses authority as Coolville's Chief of Police to harass Plaintiff Seymour's friend and threaten Plaintiff Seymour" (allegedly occurring on or around May 30, 2020);

- ¶¶ 27-46:  "Defendant Miller again beats, unlawfully seizes, and falsely imprisons Plaintiff Seymour" (allegedly occurring between May 30, 2020 and November 12, 2020);

- ¶¶ 47-52:  "Continued Threats from Defendant Miller" (allegedly occurring since Spring 2020)

- ¶ 53:  "Defendant Miller Falsifies Allegations against Plaintiff Seymour" (allegedly arising out of the May 30, 2020 incident); and

- ¶¶ 54-57:  "After being Served with Process in this Case, Defendant Miller pulls Plaintiff over" (allegedly occurring since January 23, 2021).

(ECF No. 13 at PAGEID ## 77-83.)  It is thus clear that Plaintiff implicates events dating back to the alleged August 2019 incident between Plaintiff and Defendant Miller.  (*Id.*)  Accordingly, to the extent Counts 4, 5, 6, 8, or 9 are based on the alleged August 2019 incident, Defendants are correct that such claims are facially time-barred.  Plaintiff appears to concede this point, but insists that that "[t]he gravamen of Plaintiff's . . . counts are events that occurred on May 30, 2020, less than one year before the filing of Plaintiff's Complaint," and argues that the continuing tort doctrine can save the claims which may be based on the alleged August 2019 incident.  (ECF No. 15 at PAGEID # 117)  The Court disagrees.

The Sixth Circuit has held that the continuing tort doctrine "generally applies where a plaintiff's injury is caused by cumulative exposure over time to instances of conduct that do not individually suffice to give rise to compensable detriment; that is, 'where there is no single

7

incident that can fairly or realistically be identified as the cause of significant harm.'" *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 501 (6th Cir. 2015) (quoting *Flowers v. Carville,* 310 F.3d 1118, 1126 (9th Cir. 2002) (internal quotation marks omitted)). Under Ohio law, "[f]or the continuing tort doctrine to apply, it is the *tortious act itself* that must be continuing, not the injury or harm caused by past conduct." *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 508 (S.D. Ohio 2012) (emphasis in original) (citing *Sexton v. City of Mason,* 117 Ohio St.3d 275, 2008–Ohio–858, 883 N.E.2d 1013, at ¶ 41). "In other words, the determinative question centers upon the nature of the defendant's tortious conduct, not upon the nature of the damage caused by that conduct." *Id.* (citation and internal quotations omitted).

This is not a case in which Plaintiff's alleged injuries were "caused by cumulative exposure . . . to instances of conduct that do not individually suffice to give rise to compensable detriment." *Clark*, 617 F. App'x at 501. While Plaintiff evidently believes that he has been subject to what may be considered an ongoing vendetta against him by Defendant Miller, personal vendettas are not actionable. Rather, the FAC sets forth multiple potentially-actionable events from distinct moments in time, each several months apart from the others. Specifically, the alleged August 2019 incident could have been actionable (were it not time barred), but it stands alone from the May 2020 incident, which itself stands alone from Defendant Miller's alleged actions since January 2021. This remains true regardless of whether each of the events was motivated by Defendant Miller's alleged vendetta against Plaintiff. Simply put, the history of personal interactions between Plaintiff and Defendant Miller cannot be considered one multi-year-long continuous tort under Ohio law.[2] And because the separate events cannot be

---

[2] As discussed below, however, the allegations regarding Plaintiff's various interactions with Defendant Miller since August 2019 are separately relevant for purposes of demonstrating a clear and persistent pattern of unlawful activity by Defendant Miller.

considered together, any of Plaintiff's claims which arise from the alleged August 2019 incident are time barred by the applicable one-year statute of limitations.

Accordingly, Defendants' Motion is **GRANTED**, at least as to those claims within Counts 4, 5, 6, 8, and 9 which are based on the alleged August 2019 incident between Plaintiff and Defendant Miller *see* ECF No. 13 at ¶¶ 9-22.[3]

## B. Official Capacity Claims (Counts 1, 2, 3)

Defendants also argue that Counts 1 and 2 should be dismissed as to Defendant Miller in his official capacity, and that Count 3 should be dismissed in its entirety, "because the FAC fails to specifically allege a policy or custom that was the moving force behind the alleged constitutional violation[s]." (ECF No. 14 at PAGEID ## 104-107.) Defendants argue that under *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658 (1978), municipalities and individuals being sued in their official capacity "cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (ECF No. 14 at PAGEID ## 104-105.) Defendants maintain that "Plaintiff has alleged little more than labels and conclusions and a formulaic recitation of the elements," which do not meet the applicable pleading requirements under

---

[3] The Court notes that this Order only appears to affect Counts 4, 5, and 9, to the extent those causes of action are based on both the alleged August 2019 incident and the May 2020 incident. (*See* ECF No. 13 at PAGEID # 88, ¶ 85 (Count 4) ("Defendant Miller, **on at least two separate occasions**, knowingly violated and interfered with Plaintiff Seymour's civil rights."); PAGEID # 89, ¶ 93 (Count 5) (". . . Defendant Miller used excessive force to assault, and then falsely imprison, Plaintiff Seymour **on at least two separate occasions**, depriving Plaintiff Seymour of his Constitutional rights."); PAGEID # 93, ¶ 117 (Count 9) ("Defendant Miller's use of excessive force and his seizure of Plaintiff Seymour **on at least two separate occasions** was intended to inflict emotional harm on Plaintiff.").) To the contrary, Count 6 clearly arises out of the alleged May 2020 incident, and Count 8 is expressly based on "the actions of [Defendant] Miller [on] May 30, 2020." (*See id.* at PAGEID ## 90-91, ¶¶ 96-104 (Count 6); PAGEID # 92, ¶¶ 111-114 (Count 8).)

*Monell.* (*Id.* at PAGEID ## 105-106 (internal quotations and citation omitted).)  With regard to Count 3, Defendants recognize that the FAC alleges that the "Coolville Police Department ["CPD"] maintained a policy and practice of permitting Defendant Miller to make arrests and other policing decisions without any supervisory oversight," but argue that the FAC "fails to identify any specific municipal policy, custom, training program, or supervision policy to support [Plaintiff's] claims" and instead "merely provides vague and conclusory allegations regarding a policy and practice." (*Id.* at PAGEID # 106 (internal quotations and citations omitted).)

In his Opposition, Plaintiff maintains that Defendants' argument "ignores the allegations that Defendant Miller . . . with the support and cooperation of the [CPD], falsified allegations against Plaintiff that resulted in Plaintiff having to stand trial for crimes that he did not commit and that the [CPD] knew he did not commit." (ECF No. 15 at PAGEID # 119.)  Plaintiff also highlights the pertinent allegation in Count 3 cited by Defendants and contends that "this is a specific policy of allowing arrests without any oversight" and "[i]f it were not for this policy and practice, Defendant Miller likely would not have been emboldened to not only tell people that he was going to arrest Plaintiff Seymour but actually follow through on his promise." (*Id.* at PAGEID ## 119-120.)

In their Reply, Defendants counter that Plaintiff's allegation that Defendant Miller falsified allegations "is immaterial for purposes of establishing a § 1983 claim against Defendant Miller in his official capacity." (ECF No. 16 at PAGEID # 128.)  Defendants reject the argument that Plaintiff set forth sufficient allegations, and conclude that "Plaintiff's alleged policy and practice fails for the following reasons:  (1) it is a conclusory allegation without any factual basis; (2) the [FAC] does not allege a clear and persistent pattern of illegal activity; and (3) the

10

[FAC] does not set forth any allegation that the policy itself is unconstitutional."  (*Id.* at PAGEID ## 129-132.)

As a preliminary matter, Counts 1 and 2 (against Defendant Miller in his official capacity) and Count 3 (against Defendant Village of Coolville) all arise under 28 U.S.C. § 1983. (*See* ECF No. 13 at PAGEID # 84-87, ¶¶ 58-65 (Count 1), ¶¶ 66-71 (Count 2), ¶¶ 72-80 (Count 3).)  "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent."  *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).  Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Accordingly, Counts 1, 2, and 3 are all effectively claims against the Village of Coolville.

As the Supreme Court held in *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694.  To establish a *Monell* claim, a plaintiff must:  "(1) identify the policy or custom; (2) connect the policy to the governmental entity; and (3) show injury of a constitutional magnitude incurred because of that policy's execution."  *Crowder v. Yost*, No. 3:21-CV-103, 2021 WL 4148104, at *7 (S.D. Ohio Sept. 13, 2021) (citing *Alkire*, 330 F.3d at 815 (internal citations omitted)).  The official policy or custom must be the "moving force" behind the alleged constitutional deprivation."  *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Applying that law, the Court will analyze each of Plaintiff's Section 1983 claims, beginning with the official capacity claims against Defendant Miller in Counts 1 and 2.

### 1.    Counts 1 and 2 (Against Defendant Miller in His Official Capacity)

The Court finds Defendants' arguments to be well taken as to Plaintiff's official capacity claims, as Plaintiff wholly fails to allege the existence of *any* policy or custom, let alone ones that violated Plaintiff's constitutional rights, in Count 1 or Count 2.  Rather than citing to any policy of custom by the CPD or the Village of Coolville, Plaintiff instead relies on perceived patterns of individual behavior by Defendant Miller.  Specifically, Plaintiff alleges in Count 1 that "Defendant Miller has demonstrated a pattern of abuse and threats and intimidation, all under color of law," and in Count 2 Plaintiff alleges that "Defendant Miller, on at least one occasion, restrained Plaintiff Seymour," but these allegations are insufficient to establish liability.  (*See* ECF No. 13 at PAGEID # 85, ¶¶ 64, 69.)  While Plaintiff arguably has alleged "patterns" of Defendant Miller's personal behavior, such conduct is not *de facto* an official policy, practice, or custom of the Village of Coolville or the [CPD] which can serve as a basis for liability.  What's more, instead of connecting Defendant Miller's behavior to the Village of Coolville or the [CPD], Plaintiff simply relies on the allegation that Defendant Miller has demonstrated such behavior while acting "under color of law" as the Chief of Police for the Village of Coolville.  (*See id.*)  This allegation fails, however, because "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691.

In his Opposition, Plaintiff points to the allegation that "Defendant Miller, the chief of the [CPD] and with the support and cooperation of the [CPD], falsified allegations against Plaintiff that resulted in Plaintiff having to stand trial for crimes that he did not commit and that the [CPD] knew he did not commit."  (ECF No. 15 at PAGEID # 119; *see also* ECF No. 13 at

PAGEID # 81, ¶ 53.)[4]  This allegation is irrelevant to Counts 1 and 2, however, because Count 1 is expressly related to Defendant Miller's alleged "unnecessary and excessive force" during the May 30, 2020 incident, and Count 2 is expressly tied to the alleged "false imprisonment and unlawful seizure of Plaintiff" during the May 30, 2020 incident.  (*See* ECF No. 13 at PAGEID ## 84-85, ¶¶ 58-65 (Count 1), PAGEID ## 85-86, ¶¶ 66-71 (Count 2).)  Even taking Plaintiff's allegation as true, it serves Plaintiff no good for Count 1 or Count 2.

Accordingly, in the absence of any allegations regarding a specific policy or practice which could serve as a basis of liability, Plaintiff fails to state a claim against Defendant Miller in his official capacity in Counts 1 and 2.[5]

### 2.      Count 3 (Against Defendant Village of Coolville)

Plaintiff's allegations in Count 3, on the other hand, expressly reference the existence of specific municipal policies.  Specifically, Plaintiff alleges that the CPD "maintained a policy and practice of permitting Defendant Miller to make arrests and other policing decisions without any supervisory oversight" and "maintained a policy and practice of deliberate indifference toward individual[s'] civil rights."  (ECF No. 13 at PAGEID # 87, ¶¶ 77, 79.)  Defendants argue that such allegations are conclusory, do not allege a clear and persistent pattern of illegal activity, and do not allege that the policies are unconstitutional.  (*See* ECF No. 16 at PAGEID ## 129-132.).

As a preliminary matter, Plaintiff does not appear to allege (and does not appear to argue) that the CPD maintained such policies in a written or formal manner.  This does not doom

---

[4] Plaintiff further argues that the FAC alleges "that the [CPD] maintained a policy and practice of permitting Defendant Miller to make arrests and other policing decisions without any supervisory oversight," but this allegation relates only to Count 3 and is discussed below.  (ECF No. 15 at PAGEID # 119 (internal quotation and citation omitted).)

[5] To be clear, this conclusion does not affect Plaintiff's claims against Defendant Miller in his individual capacity as set forth in Counts 1 and 2, which Defendants have not moved to dismiss.

Plaintiff's claim, however, because the Sixth Circuit has long recognized that "there need not be a formal policy for there to be an unconstitutional custom that amounts to policy" for purposes of imposing liability under § 1983. *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). The Sixth Circuit has recognized at least four avenues by which to prove a municipality's policy or custom:

> [T]he plaintiff may prove: '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'"

*Davis v. City of Columbus, Ohio*, No. 2:17-CV-823, 2021 WL 4399755, at *4 (S.D. Ohio Sept. 27, 2021) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013))). "Whichever of the four routes is taken, 'a plaintiff must demonstrate a close causal connection between the policy and the injuries suffered as well.'" *Id.* (quoting *Johnson v. Hardin Cty.*, 908 F.2d 1280, 1285 (6th Cir. 1990)). "In other words, 'the municipal action [must be] the moving force behind the injury of which the plaintiff complains.'" *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).

Construing the FAC as true in the light most favorable to Plaintiff, the Court finds that Plaintiff affirmatively alleged, at least in passing, the last three of these "avenues" of liability. (*See* ECF No. 13 at PAGEID # 86, ¶ 73 ("This claim is brought against Defendant Village of Coolville for its Police Department's policies, customs, and procedures and **its ratification of civil rights violations**.") (emphasis added), PAGEID # 86, ¶ 77 ("At all material hereto, [the CPD] maintained a policy and practice of permitting Defendant Miller to make arrests and other policing decisions **without any supervisory oversight**.") (emphasis added), PAGEID # 86, ¶ 77 ("The [CPD] maintained a policy and practice of **deliberate indifference towards individual's civil rights**.") (emphasis added)). While the Court declines to analyze whether Plaintiff has met

14

all of the additional pleading requirements for the second and third "avenues" of liability, the Court finds that Plaintiff has done so for the fourth "avenue" of liability.

Under the fourth "avenue," a plaintiff may plead municipal liability under *Monell* by demonstrating the existence of a custom of tolerance or acquiescence to the violation of constitutional rights. *Davis*, 2021 WL 4399755, at *10. The Sixth Circuit has identified four factors that a plaintiff must prove in order to establish a custom of tolerance or acquiescence: "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the moving force or direct causal link in the constitutional deprivation." *Id.* (citing *Stanfield v. Lima*, 727 F. App'x 841, 851 (6th Cir. 2018) (internal quotation omitted)). Failure to investigate can constitute a custom of tolerance rising to the level of deliberate indifference. *Id.* (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247–48 (6th Cir. 1989)).

Here, Plaintiff has sufficiently alleged all four of these elements. First, while certain of Plaintiff's claims are time barred to the extent that they arise out of the alleged August 2019 incident, Plaintiff's allegations regarding the events in August 2019 nevertheless serve to set forth a "clear and persistent pattern of illegal activity" by Defendant Miller at this early pleading stage. By including allegations regarding similar incidents from August 2019, May 30, 2020, and since January 23, 2021, Plaintiff has sufficiently established that Defendant Miller's alleged conduct on May 30, 2021 was not an isolated incident – even if it is the only incident for which Plaintiff seeks relief. *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 272 (S.D. Ohio 2021), *modified sub nom. Alsaada v. City of Columbus, Ohio*, No. 2:20-CV-3431, 2021 WL 3375834

(S.D. Ohio June 25, 2021) ("One instance of potential misconduct is insufficient to show a clear and persistent pattern of constitutional violations. Such a pattern, however, *is* shown by "enough similar incidents" sufficient to put officials on notice that persons "would be subject to constitutional deprivation" if the problem is not remedied.") (emphasis in original; quoting *Stewart v. City of Memphis*, 788 F. App'x 341, 347 (6th Cir. 2019); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989)). To this end, the Court rejects Defendants' argument that Plaintiff's allegations were merely conclusory and without factual support, as all three incidents, as alleged, fit[6] Plaintiff's *Monell* theory that the CPD "maintained a policy and practice of permitting Defendant Miller to make arrests and other policing decisions without any supervisory oversight" and "maintained a policy and practice of deliberate indifference toward individual[s'] civil rights." (ECF No. 13 at PAGEID # 87, ¶¶ 77, 79; ECF No. 16 at PAGEID ## 129-130.)

As to the other elements of Plaintiff's *Monell* claim, the FAC further alleges that "[a]t all relevant times, Defendant Miller was acting within the course and scope of his employment and within the scope of policies, practices, and customs of the [CPD], and . . . **with the [CPD's] consent**." (*Id.* at PAGEID # 86, ¶ 75 (emphasis added).) This allegation, taken as true, meets not only the notice (second) element but also the "tacit approval" (third) element of Plaintiff's claim. As for the causal link (fourth) element, Plaintiff sufficiently alleges that "[t]he [CPD's] policies, practices, customs, and actions actually and proximately caused, and enabled, Defendant Miller's violations of Plaintiff Seymour's constitutional rights." (*Id.* at PAGEID # 87, ¶ 80.) The Court therefore rejects Defendants' argument regarding Count 3.

---

[6] As discussed, the Court is required to take all of the allegations in Plaintiff's FAC as true and draw all reasonable inferences in Plaintiff's favor for purposes of the subject motion to dismiss, but the Court expresses no opinion regarding the ultimate merits of Plaintiff's claims.

Accordingly, Defendants' Motion is **GRANTED**, as to Plaintiff's claims in Counts 1 and 2 against Defendant Miller in his official capacity and **DENIED** as to Count 3.

## C.     Claims Arising Under O.R.C. § 2307.60 (Counts 4, 5, 6)

Defendants further argue that Counts 4, 5, and 6, each of which is brought under O.R.C. § 2307.60, fail to state a claim upon which relief can be granted because O.R.C. § 2307.60 does not create a separate civil action under Ohio law.  (ECF No. 14 at PAGEID ## 107-108.) Defendants also argue that Counts 4 and 6 do not meet the pleading requirements under the applicable statutes for each claim.  (*Id.* at PAGEID ## 108-111.)  In response, Plaintiff rejects Defendants' cited legal authorities and instead contends that O.R.C. § 2307.60 "does create a civil action for damages from violations of criminal acts regardless of whether or not there was a parallel civil cause of [action]."  (ECF No. 15 at PAGEID # 120 (internal citation omitted).) Plaintiff insists that "[t]here is no law which specifically excepts any of the alleged criminal violations here from the purview of [O.R.C. § 2307.60]."  (*Id.*)

The statute at issue, O.R.C. § 2307.60, provides in relevant part that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law[.]"  Ohio Rev. Cod. § 2307.60(A)(1).  The Supreme Court of Ohio has held that "[b]y its plain and unambiguous language, **R.C. 2307.60 creates a civil cause of action for damages resulting from any criminal act**, unless otherwise prohibited by law." *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 2016-Ohio-8434, 75 N.E.3d 203, at ¶ 13 (emphasis added).  The Supreme Court of Ohio later added that "the plain language does not require a criminal conviction as a prerequisite for civil liability."  *Buddenberg v. Weisdack*, 161 Ohio St. 3d 160, 2020-Ohio-3832, 161 N.E.3d 603, at ¶ 11.

In light of these cases, both this Court and the Northern District of Ohio routinely acknowledge civil actions brought under O.R.C. § 2307.60. *See Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *2 (S.D. Ohio May 17, 2021) ("The Ohio Revised Code provides compensatory and punitive damages for those injured by another party's criminal act.") (citing Ohio Rev. Code § 2307.60 and *Buddenberg*); *Waters v. Pizza to You, LLC*, No. 3:19-CV-372, 2021 WL 229040, at *6 (S.D. Ohio Jan. 22, 2021) ("The Ohio Revised Code provides compensatory and punitive damages for those injured by another party's criminal act.") (citing Ohio Rev. Code § 2307.60 and *Buddenberg*); *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 642 (S.D. Ohio 2020) ("Although Defendant is correct that several courts had previously required a conviction to state a claim for a civil action for a criminal act, the Ohio Supreme Court recently interpreted § 2307.60 and determined that 'the plain language of the statute does not require proof of an underlying criminal conviction'. Accordingly, Plaintiff need not allege an underlying criminal conviction in order to state a claim for civil action for damages or a criminal act.") (internal footnote omitted) (citing *Buddenberg*); *see also FirstEnergy Corp. v. Pircio*, 524 F. Supp. 3d 732, 744 (N.D. Ohio 2021) ("Ohio law provides a civil cause of action for any person injured by a criminal act, even where the defendant has not been convicted of a crime.") (citing Ohio Rev. Code § 2307.60). Accordingly, Defendants' argument that O.R.C. 2307.60 "does not create a separate civil cause of action" is not well taken.[7]

---

[7] The Court takes judicial notice of the fact that in the chief case on which Defendants rely, *Phillips v. City of Cincinnati*, S.D. Ohio Case No. 1:18-cv-541, Plaintiff attempted to bring a similar claim under *only* O.R.C. § 2921.45, and did *not* attempt to bring the claim under O.R.C. § 2307.60. (*See id.*, ECF No. 34-1 at PAGEID ## 659-660 (Count Thirteen)).) Accordingly, the decision cited by Plaintiff is inapplicable to the subject matter, and it predates the Supreme Court of Ohio's decision in *Buddenberg* in any event. *See Phillips v. City of Cincinnati*, No. 1:18-CV-541, 2019 WL 2289277 (S.D. Ohio May 29, 2019).

While this conclusion ends the inquiry as to Count 5, the Court must also consider whether Plaintiff has adequately pled Counts 4 and 6.  (*See* ECF No. 14 at PAGEID ## 108-111.)

### 1.    O.R.C. § 2921.45

For Count 4, Plaintiff seeks relief for Defendant Miller's alleged violation of O.R.C. § 2921.45, which provides as follows:

> (A)    No public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.

> (B)    Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

Ohio Rev. Code § 2921.45.  Count 4, which is Plaintiff's claim arising under this statute, asserts the following, in relevant part:

> 85.    Defendant Miller, on at least two separate occasions, knowingly violated and interfered with Plaintiff Seymour's civil rights. On at least two separate occasions, Defendant Miller violated Plaintiff Seymour's Constitutional civil rights protected by the Fourth, Fifth, and Fourteenth Amendments by subjecting Plaintiff Seymour to excessive force and false imprisonment.

> 86.    Defendant Miller acted knowingly and intentional[l]y and his actions actually and proximately caused the violation of Plaintiff Seymour's Constitutional rights, and in the process caused physical damages and permanent and ongoing psychological damages, in addition to the deprivation of Plaintiff Seymour's civil rights.

(ECF No. 13 at PAGEID # 88, ¶¶ 85-86.)

In their Motion, Defendants argue that "because the [FAC] does not adequately plead facts regarding Defendant Miller's mental state . . . the [FAC] fails to state a claim upon which relief can be granted regarding [Count 4]."  (ECF No. 14 at PAGEID # 110.)  In his Opposition, Plaintiff argues that "the [FAC] is jam packed with fact specific allegations that support Plaintiff's claims," and urges the Court to "decline the invitation to find that Defendant Miller did not interfere with Plaintiff's civil rights when he punched, choked, beat, and threatened

Plaintiff."  (ECF No. 15 at PAGEID # 121.)  In their Reply, Defendants simply state that they "maintain that [Count 4] . . . fail[s] to set forth allegations to withstand a 12(B)(6) motion."  (ECF No. 16 at PAGEID # 132.)

The Court does not find Defendants' argument to be well taken.  While the Court believes that Plaintiff sufficiently alleged Defendant Miller's mental state within Count 4, it also finds that the totality of the allegations throughout Plaintiff's FAC more than adequately support the allegation that Defendant Miller acted "knowingly" when he allegedly violated Plaintiff's civil rights.  (ECF No. 13 at PAGEID # 88, ¶¶ 85-86.)

**2.     O.R.C. § 2921.52**

For Count 6, Plaintiff seeks relief for Defendant Miller's alleged violation of O.R.C. § 2921.52, which provides in relevant part as follows:

(A)     As used in this section:

\*\*\*

(4)     "Sham legal process" means an instrument that meets all of the following conditions:

    (a)     It is not lawfully issued.

    (b)     It purports to do any of the following:

        (i)     To be a summons, subpoena, judgment, or order of a court, a law enforcement officer, or a legislative, executive, or administrative body.

        (ii)     To assert jurisdiction over or determine the legal or equitable status, rights, duties, powers, or privileges of any person or property.

        (iii)     To require or authorize the search, seizure, indictment, arrest, trial, or sentencing of any person or property.

    (c)     It is designed to make another person believe that it is lawfully issued.

20

(B)     No person shall, knowing the sham legal process to be sham legal process, do any of the following:

(1)     Knowingly issue, display, deliver, distribute, or otherwise use sham legal process;

(2)     Knowingly use sham legal process to arrest, detain, search, or seize any person or the property of another person;

(3)     Knowingly commit or facilitate the commission of an offense, using sham legal process;

(4)     Knowingly commit a felony by using sham legal process.

***

(D)     Whoever violates this section is guilty of using sham legal process. A violation of division (B)(1) of this section is a misdemeanor of the fourth degree. A violation of division (B)(2) or (3) of this section is a misdemeanor of the first degree, except that, if the purpose of a violation of division (B)(3) of this section is to commit or facilitate the commission of a felony, a violation of division (B)(3) of this section is a felony of the fourth degree. A violation of division (B)(4) of this section is a felony of the third degree.

(E)     A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs, and other expenses incurred as a result of prosecuting the civil action commenced under this division. A civil action under this division is not the exclusive remedy of a person who incurs injury, death, or loss to person or property as a result of a violation of this section.

Ohio Rev. Code § 2921.52.[8]  Count 6, which is Plaintiff's claim arising under this statute, asserts

the following, in relevant part:

99.     Defendant Miller used sham legal processes when he assaulted with excessive force, detained, and/or arrested Plaintiff Seymour without justification and when Plaintiff Seymour had committed no crimes.

---

[8] Although not discussed above, the plain language of O.R.C. § 2921.45(E) further rebuts Defendants' argument that Ohio law prevents Plaintiff from asserting a cause of action for injury arising from an act which violates this statute.

> 100. Defendant Miller used sham legal processes when he initiated the process for criminal proceedings to be initiated against Plaintiff.

> 101. Defendant Miller used sham legal process when he provided false information in furtherance of criminal charges being pursued against Plaintiff.

(ECF No. 13 at PAGEID # 90, ¶¶ 99-100.)

In their Motion, Defendants focus on the fact that Count 6 does not include the word "knowingly," and argue that "there is no cause of action for using sham legal process unless the 'knowingly' requirement of [O.R.C. § 2921.52(B)] is established." (ECF No. 14 at PAGEID # 111.) The Court disagrees, however, and again finds that the totality of the allegations throughout Plaintiff's FAC support the claim that Defendant Miller acted "knowingly" when he allegedly used sham legal processes. *See Hellenberg v. Integrated Deicing Servs., LLC*, No. 10-CV-11364, 2011 WL 317733, at *2 (E.D. Mich. Feb. 1, 2011) ("Although Plaintiff's Complaint does not use the word 'knowingly,' such knowledge may be inferred from the totality of the allegations . . . .") Specifically, outside of the allegations in Count 6, Plaintiff alleged that Defendant Miller "has stated that he plans to falsely concoct criminal charges against Plaintiff," that Defendant Miller then "falsified allegations against Plaintiff." (ECF No. 13 at PAGEID ## 76, 83.) Taking all of these allegations as true and construing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has alleged enough for Count 6 to survive Defendants' Motion to Dismiss.

Accordingly, Defendants' Motion is **DENIED** as to Counts 4 and 5, except as discussed above regarding the statute of limitations, and as to Count 6.

## D. Political Subdivision Immunity (Counts 7, 10)

Defendants finally argue that they are shielded from liability under Counts 7 and 10 on principles of political subdivision immunity pursuant to Ohio's Political Subdivision Tort Liability Act, as codified at O.R.C. § 2744.02, *et seq*. (the "PSTLA"). (ECF No. 14 at PAGEID

## 111-114.)  The Court will analyze Defendants' arguments as to Count 7 and Count 10 separately.

    **1.**    **Count 7**

    In Count 7, Plaintiff alleges that "Defendant Miller was an employee and/or agent of the [CPD], acting within the course and scope of his employment with the [CPD], and in furtherance of the interest of [CPD], and with [CPD's] consent," and that Defendant Miller acted with gross negligence "by wantonly and willfully using unnecessary force against Plaintiff."  (ECF No. 13 at PAGEID ## 91-92, ¶¶ 105-110.)  In the subject Motion, Defendants argue that "[i]t is clear from the allegations set forth in the [FAC] that Defendant Miller's actions, which provide the basis for all of Plaintiff's claims, were taken in connection with his employment as the Chief of Police for the [Village of Coolville]," but because various statutory exceptions are unavailable, the PSTLA shields Defendant Miller from liability under Count 7.  (ECF No. 14 at PAGEID ## 113-114.)  In response, Plaintiff argues that because he alleged that Defendant Miller "acted wantonly and willfully," the statutory exception at O.R.C. 2744.03(A)(6)(b) applies and Defendant Miller is not afforded immunity under the PSTLA.  (ECF No. 15 at PAGEID # 121.)  In reply, Defendants only respond that "it appears that the allegations contained in the [FAC] are directed against Defendant Miller in his official capacity as an officer of the Village of Coolville."  (ECF No. 16 at PAGEID ## 132-133.)  Defendants do not address the statutory exception at O.R.C. 2744.03(A)(6)(b) in their reply brief.  (*Id.*)

    Defendant Miller's immunity under the PSTLA requires a two-step analysis.  *King v. City of Columbus, Ohio*, No. 2:18-CV-1060, 2019 WL 1508279, at *3 (S.D. Ohio Apr. 5, 2019) ("Defendants assert that a political subdivision's employees are personally immune to state-law tort liability under Ohio's Political Subdivision Tort Liability Act, Ohio Rev. Code Ann. § 2744.

This immunity requires a two-step analysis.").  First, the Court must determine whether the immunity presumptively applies to Defendant Miller.  *Id.*  O.R.C. § 2744.03(A) provides presumptive immunity to employees[9] in civil actions brought "to recover damages for injury, death, or loss to person or property allegedly caused by an act or omission in connection with a governmental or proprietary function."  Ohio Rev. Code Ann. § 2744.03(A).  Here, this presumptive immunity clearly applies to Defendant Miller.  To this end, Plaintiff affirmatively alleges that Defendant Miller "was an employee and/or agent of the [CPD], acting within the course and scope of his employment with the [CPD], and in furtherance of the interest of [CPD], and with [CPD's] consent."  (ECF No. 13 at PAGEID ## 91-92, ¶¶ 105-110.)  These allegations both (a) establish Defendant Miller as an employee under the PSTLA, and (b) qualify Defendant Miller's conduct as a "governmental function"[10] under the PSTLA.  *See King*, 2019 WL 1508279, at *3 ("[A]ll of King's allegations against Chief Jacobs involve conduct related to police . . . services or protection, which qualifies as a governmental function under section 2744.") (internal quotations omitted) (citing Ohio Rev. Code § 2744.01(C)(2)(a)).

Having found that the presumptive immunity applies, the Court must then determine whether any of the statutory exceptions apply to rebut that presumption.  *Id.*  While Defendants maintain that no exceptions apply, Plaintiff argues that the statutory exception at O.R.C. § 2744.03(A)(6)(b) applies.  (ECF No. 15 at PAGEID # 121.)  The relevant statute provides in relevant part as follows:

---

[9] O.R.C. § 2744.01(B) defines an "employee" as "an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision."  Ohio Rev. Code Ann. § 2744.01(B).

[10] By definition, a "governmental function" includes "[t]he provision . . . of police . . . services or protection."  Ohio Rev. Code Ann. § 2744.01(C)(2)(a).

> (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, **the employee is immune from liability unless one of the following applies**: . . . (b) **The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner**[.]

Ohio Rev. Code § 2744.03(A)(6) (emphasis added). The Court must then look to Count 7, which reads in relevant part as follows:

> 108. Defendant Miller owed a duty to Plaintiff Seymour to act in a prudent and reasonable manner with regard to Plaintiff Seymour's health and safety. **Defendant Miller breached the duty owed to Plaintiff Seymour by wantonly and willfully using unnecessary force against Plaintiff Seymour.**

(ECF No. 13 at PAGEID ## 91-92, ¶ 108 (emphasis added).) Particularly in the absence of any argument by Defendants to the contrary, the Court finds that this allegation is sufficient to trigger the exception set forth in O.R.C. § 2744.03(A)(6)(b) and, subject to proof, could defeat the presumption of immunity against Defendant Miller for purposes of Count 7. Accordingly, Defendants' Motion is **DENIED** as to Count 7.

    **2.**     **Count 10**

Defendants also argue that O.R.C. § 2744.02 shields the Village of Coolville from liability under Count 10. (ECF No. 14 at PAGEID ## 111-114.) In response, Plaintiff "does not contest the dismissal of Count 10." (ECF No. 15 at PAGEID # 122.) Accordingly, Defendants' Motion is **GRANTED** as to Count 10.

## IV.     CONCLUSION

For the reasons stated above, Defendants' Partial Motion to Dismiss the First Amended Complaint, ECF No. 14, is **GRANTED IN PART** and **DENIED IN PART**. Counts 1 and 2 of Plaintiff's First Amended Complaint and Demand for Jury Trial, ECF No. 13, are **DISMISSED IN PART** against Defendant Miller in his official capacity; Counts 4, 5, 6, 8, and 9 are

**DISMISSED IN PART** to the extent Plaintiff seeks relief for events before January 23, 2020;

and Count 10 is **DISMISSED**.

> **IT IS SO ORDERED**.

Date: **January 10, 2022**                    /s/ *Elizabeth A. Preston Deavers*
                                              **ELIZABETH A. PRESTON DEAVERS**
                                              **UNITED STATES MAGISTRATE JUDGE**